**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONNA M. REDFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-88 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., District Judge.

## I.   INTRODUCTION

Donna M. Redfield ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* and § 1381 *et seq*. Plaintiff filed her applications on September 25, 2008, alleging disability since June 1, 2008 due to fibromyalgia (AR 125-132; 151).[1]  Her applications were denied (AR 76-85), and following a hearing held on October 14, 2009 (AR 1-37), the administrative law judge ("ALJ") issued his decision denying benefits to Plaintiff on December 8, 2009 (AR 61-72).

Plaintiff's request for review by the Appeals Council was subsequently denied (AR 38-42), rendering the Commissioner's decision final under 42 U.S.C. § 405(g).  The instant action challenges the ALJ's decision.  Presently pending before the Court are the parties' cross-motions for summary judgment.  For the reasons that follow, the Plaintiff's motion will be denied and the Commissioner's motion will be granted.

---

[1] References to the administrative record [ECF No. 6], will be designated by the citation "(AR ___)".

1

## II.     BACKGROUND

Plaintiff was 46 years old on the date of the ALJ's decision and has a high school education (AR 70; 156).  She has past work experience as daycare provider and telemarketer (AR 152).

The relevant medical records reveal that the Plaintiff was seen in the emergency room at UPMC Northwest in Seneca, Pennsylvania on April 15, 2008 for complaints of difficulty breathing (AR 205-222).  She was diagnosed with chronic obstructive pulmonary disease ("COPD"), Albuterol therapy was administered, and she was advised to stop smoking (AR 205-206).  On April 21, 2008, Plaintiff was seen for follow up at Seneca Medical Center (AR 292-294).  Plaintiff reported that her lungs felt "heavy" at the end of the day (AR 292).  She indicated that she had been a cigarette smoker since she was twelve, and had tried unsuccessfully to quit in the past (AR 293).  Her physical examination was unremarkable, except some diminished sound was noted over her lungs bilaterally (AR 293).  She was prescribed Advair and a Bronchodilator (AR 293).

On April 28, 2008, Veronica Santee, M.D., noted that Plaintiff appeared to have myofascial pains associated with stress or yard work (AR 291).   She assessed Plaintiff with myalgia and myositis unspecified, recommended conservative treatment, and added Flexeril to her medication regimen (AR 291).  Plaintiff was seen by Bradley Fell, M.D. for follow up on May 28, 2008 (AR 288-289).  Her physical examination was unremarkable and her medications were continued (AR 289).

On June 23, 2008, Plaintiff complained of low back pain when seen by Dr. Santee but denied any other associated symptoms (AR 285).  Plaintiff reported that she hurt herself hauling wood approximately three years prior (AR 285).  On physical examination, Dr. Santee noted that Plaintiff walked with a normal gait, had decreased flexion, normal extension, tenderness to palpation of her sacroiliac joint bilaterally, and normal deep tendon reflexes (AR 286).  She was assessed with lumbago, Prednisone was prescribed, and x-rays were ordered (AR 286).  While Dr. Santee preferred that Plaintiff attend physical therapy, he noted that she was "reluctant" to do

so "due to time constraints" (AR 286).  On June 29, 2008, x-rays of the Plaintiff's lumbar spine revealed minimal disc and facet degenerative disease (AR 251).

When seen by Kim Davis, CRNP on July 7, 2008, Plaintiff continued to complain of back pain radiating into her hips (AR 282).  Plaintiff rated her pain levels as a 5 on a 10-point scale (AR 282).  Physical examination revealed no tenderness, normal strength and muscle tone, negative straight leg raise testing, no sensation loss and good mobility in all extremities (AR 283).  Range of motion testing revealed some limited movement and pain on left rotation and extension (AR 283).  Medications were prescribed and Plaintiff was instructed on proper lifting and body mechanics, and back exercises (AR 283).  An MRI of the Plaintiff's lumbar spine dated July 18, 2008 showed multilevel degenerative disc disease (AR 249).

When seen by Michael Mewes, CRNP on July 21, 2008, Plaintiff complained of moderate pain and intermittent achiness that had worsened since the death of her mother in July 2007 (AR 279).  Plaintiff reported that the pain radiated to her legs and was aggravated by bending, driving, lifting and postural changes (AR 279).  On physical examination, Mr. Mewes found Plaintiff's range of motion was mildly limited with some lumbar tenderness (AR 280).  Her straight leg raise testing was negative bilaterally (AR 280).  She was assessed with lumbago and intervertebral lumbar disc degeneration (AR 280).  Mr. Mewes completed a form for the Pennsylvania Department of Public Welfare ("DPW") stating that Plaintiff was temporarily disabled from July 21, 2008 to October 21, 2008 due to a primary diagnosis of lumbago and a secondary diagnosis of degenerative disc disease (AR 193).

Plaintiff continued to complain of low back pain when seen by Frederick Krueger, D.O. on July 30, 2008 (AR 276).  On physical examination, Dr. Krueger found that Plaintiff walked with a "markedly antalgic gait," had tenderness of the spine bilaterally, and had some decreased range of motion on flexion and extension (AR 277).  She exhibited full spine extension and normal muscle tone bilaterally (AR 277).  Her motor strength and sensation were intact, and she had good mobility in all extremities (AR 277).

Plaintiff underwent physical therapy for her complaints of back pain on three occasions from July 30, 2008 through August 7, 2008 (AR 233-243).  At her final treatment session,

Plaintiff reported her pain level as a 3 to 4 out of 10 (AR 233). Plaintiff met some of her treatment goals, but failed to continue treatment and was discharged from physical therapy (AR 233).

Plaintiff returned to Seneca Medical Center on August 11, 2008 and reported to Ms. Davis that she continued to suffer from aching back pain radiating to her thighs and associated fatigue (AR 272). Plaintiff rated her pain as a 5 out of 10 when inactive, and a 10 with activity (AR 272). On physical examination, Ms. Davis found Plaintiff walked with a normal gait, had a limited range of motion, and limited flexion with pain (AR 273). Her straight leg raise testing was negative bilaterally and she was able to normally heel and toe walk (AR 273). It was noted that she needed DPW forms completed in order to obtain her COPD medications (AR 272). Ms. Davis completed the DPW form stating that Plaintiff was temporarily disabled from July 21, 2008 to October 21, 2008 due to back pain, COPD and a "heart murmur" (AR 194-196). An echocardiogram conducted on August 15, 2008 was essentially normal (AR 246-248).

Plaintiff was evaluated by John Karian, M.D., a neurosurgeon, on August 12, 2008 for her complaints of back pain (AR 232). On physical examination, she exhibited a physiologic gait and stance, had full strength, and her reflexes were 2+ at all sites with no pathologic signs noted (AR 232). Dr. Karian reviewed Plaintiff's MRI of her lumbar spine, and noted that it showed decreased stature at the L5-S1 level and mild degenerative changes at several sites (AR 232). Dr. Karian concluded that no surgical intervention was warranted, and recommended that she continue with conservative treatment (AR 232).

Plaintiff returned to Dr. Krueger on August 28, 2008 and complained of back and neck pain (AR 269). Plaintiff walked with a normal gait, but Dr. Krueger found multiple tender points on her back and legs (AR 270). He assessed her with myalgia and myositis unspecified, with fibromyalgia as a "working diagnosis" (AR 270).

When seen by Dr. Fell on September 18, 2008, he noted that Plaintiff's recent lab work had been negative for any rheumatic disease, and that her "clinical picture" and history were suggestive of fibromyalgia (AR 266). Although Plaintiff reported that she exercised regularly, her musculoskeletal examination revealed slowness and stiffness from arthralgia (AR 267).

4

Plaintiff returned on October 7, 2008 for follow up and continued to complain of pain (AR 263-264). Plaintiff was unable to flex due to back pain during physical examination (AR 264). Dr. Santee noted that Plaintiff had mild degenerative joint disease (AR 264). She completed Plaintiff's DPW form stating that Plaintiff was temporarily "incapacitated" until January 1, 2009 (AR 198).

Plaintiff completed a functional report with regard to her activities on October 13, 2008 (AR 158-168). Plaintiff reported that she was able to care for her dogs, crochet, run the sweeper, make the bed, do laundry, watch television, drive and shop for groceries (AR 158; 161). She also claimed that she was able to garden and walk outside (AR 158). Plaintiff further reported that she napped every day for one hour as a result of drowsiness caused by her medications (AR 158). She was able to mow the grass with a riding lawn mower, although it took her three hours due to breaks (AR 160). She lived with her boyfriend, but being around people caused her to be nervous and stressed (AR 163).

Plaintiff was seen by Norman Beals, III, M.D. on November 10, 2008 (AR 359-361). She reported fatigue and myalgia but denied arthralgia (AR 359-360). Dr. Beals reported Plaintiff was in no acute distress and walked with a normal gait (AR 360). No abnormalities were noted on physical examination (AR 360).

An x-ray of the Plaintiff's lumbar spine dated December 2, 2008 revealed an acute compression fracture at the T12 level and degenerative changes at the L1-2 level (AR 333). A CT scan of the Plaintiff's cervical spine was reported as normal (AR 337).

Plaintiff continued her treatment at Seneca Medical Center throughout 2009. On January 7, 2009, Plaintiff was seen by Dr. Fell for follow up of her compression fracture but had no other concerns (AR 356). She reported that she exercised regularly (AR 357). Dr. Fell noted that her gait was stiff and she was sore in the area of her fracture (AR 357). He found that her compression fracture seemed to be healing fine on its own, and continued her medications (AR 357-358).

On June 30, 2009, Dr. Fell diagnosed Plaintiff with osteoporosis (AR 353). Plaintiff complained of lower back pain and bilateral hip pain, but reported that she regularly exercised

(AR 353-354). Dr. Fell found that Plaintiff had tenderness in her lower spine and hips on physical examination, and noted that she shifted positions frequently due to pain (AR 354). He prescribed additional medications (AR 354-355).

Plaintiff was evaluated on August 4, 2009 by Cheryl Bernstein, M.D. for her complaints of low back and hip pain upon referral by Dr. Fell (AR 363-365). Plaintiff reported that her pain interfered with her normal daily activities (AR 363). On physical examination, Plaintiff exhibited pain behavior including frequent weight shifting, changing position, and moving from sitting to standing to lying throughout the examination (AR 354). A musculoskeletal examination revealed full muscle strength at 5/5 in the upper and lower extremities, normal hip range of motion, intact sensation and negative straight leg raise testing (AR 364).

Dr. Bernstein diagnosed Plaintiff with chronic low back and hip pain, and fibromyalgia (AR 364). She recommended that Plaintiff switch from Neurontin to Lyrica, but Plaintiff refused (AR 364). Dr. Bernstein also recommended that Plaintiff participate in a pain rehabilitation program two days per week with the option to stay overnight in the family health unit (AR 364). However, Plaintiff indicated that she "was not interested" due to its geographic location (AR 364). Dr. Bernstein recommended Plaintiff try Cymbalta, which had been shown to be beneficial to fibromyalgia patients, but Plaintiff refused (AR 364).

Finally, when seen by Dr. Beals on August 28, 2009, Plaintiff reported suffering from hot flashes, anxiety attacks, lower back pain, right shoulder pain, bilateral hip pain and right knee pain, but denied any arthralgia or myalgia (AR 342). Dr. Beals noted that she walked with a normal gait, appeared well and comfortable and was in no apparent distress (AR 343). No abnormalities were noted on physical examination and he continued her medications (AR 343-344).

Plaintiff and Frances Kinley, a vocational expert, testified at the hearing held by the ALJ on October 14, 2009 (AR 1-37). Plaintiff testified that she had not worked since 2008, and left her most recent job due to stress and anxiety (AR 14; 17). Plaintiff stated that medication controlled her COPD symptoms (AR 15). She claimed that her inability to work was due to constant low back and hip pain (AR 8). She also testified that she suffered from shoulder and

6

neck pain twice per week, as well as daily headaches (AR 8-9; 24).  She claimed her medications and prior physical therapy were ineffective in combating her pain (AR 9; 11).  Plaintiff stated that she reclined on a heating pad or took a hot bath two to three times per day to alleviate her pain (AR 12; 19-20).  She had one or two "good" days per week and indicated that she needed to alternate between standing and sitting for comfort (AR 11-12; 23).  On a daily basis, Plaintiff testified that she cleaned her house, walked in the yard, prepared leftovers in the microwave and watched television (AR 13; 16).  She gardened occasionally but had trouble bending (AR 14).  She cut the grass with a riding lawn mower (AR 14).  She claimed she did not like to be around other people, but did socialize with family twice a week (AR 15-16).

       The ALJ asked the vocational expert to assume an individual of the same age, education and work experience as the Plaintiff, who was capable of unskilled, light work that involved standing and walking, and sitting, for up to six hours each in an eight-hour workday; that included a sit/stand option at thirty minute intervals; required only occasional postural movements; and involved no concentrated exposure to fumes, dust, odors, or temperature extremes (AR 33).  Such individual was further limited to simple, routine, repetitive tasks; low stress work (defined as occasional decision making and changes in the work setting); and only occasional interaction with the public and coworkers (AR 33-34).  The vocational expert testified that such an individual could perform the light positions of a packer, companion, and office helper (AR 34).

       In addition to her testimony, Plaintiff submitted a letter written by her boyfriend, Gerry Hargenrader, dated October 13, 2009, wherein he stated that Plaintiff was limited in her activities due to her fibromyalgia and pain (AR 191).  Mr. Hargenrader stated that they no longer enjoyed a social life, and that Plaintiff used a heating pad and hot baths to alleviate her pain (AR 191).

       Following the hearing, the ALJ issued his decision denying benefits to the Plaintiff (AR 61-72) and her request for review by the Appeals Council was denied (AR 38-42), rendering the Commissioner's decision final under 42 U.S.C. § 405(g).  She subsequently filed this action.

### III.   STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 1097, 229 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).  It has been defined as less than a preponderance of evidence but more than a mere scintilla.  *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive.  42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390.  A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh evidence of record.  *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings.").  To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole.  *See* 5 U.S.C. § 706.

### IV.   DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity.  42 U.S.C. § 423(d)(1)(A).  Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels.  42 U.S.C. § 1382(a).  A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI.  *Compare* 42 U.S.C. § 423(a)(1) with 42 U.S.C. § 1382(a).  In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the

expiration of his insured status. 42 U.S.C. § 423(a), (c).  The ALJ found that the Plaintiff met the disability insured status requirements of the Act through June 30, 2012 (AR 61).  SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner uses a five-step evaluation process to determine when an individual meets this definition.  *See* 20 C.F.R. §§ 404.1520; 416.920.  The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, Appx. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003).  If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Here, the ALJ concluded that Plaintiff had the following severe impairments: fibromyalgia, degenerative disc of the lumbar spine, COPD and a mood disorder, but determined at step three that she did not meet a listing (AR 63-66). The ALJ described the Plaintiff's residual functional capacity as follows:

> …[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[2] except she requires a sit or stand

---

[2] This definition states:

9

> option every 30 minutes. She can occasionally climb, balance, stoop, kneel, crouch and crawl. She must avoid concentrated exposure to extreme heat or cold. She is limited to simple, routine, repetitive tasks. She requires low-stress work, which is defined as occasional decision making and occasional changes in the work setting. She can have occasional interaction with the public and coworkers.

(AR 66) (footnote added). At the final step, the ALJ concluded that Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 71). The ALJ also determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible to the extent they were inconsistent with his residual functional capacity assessment (AR 67). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff first challenges that ALJ's evaluation of her daily activities at steps three and four of the sequential evaluation process. [ECF No. 9] pp. 3-5. At step three, the ALJ is required to determine whether the claimant has an impairment or combination of impairments that meets or equals a listed impairment in Appendix 1, 20 C.F.R. § 416.920(d). A claimant who meets or medically equals all of the criteria of an impairment listed in Appendix 1 is *per se* disabled and no further analysis is necessary. *Burnett v. Comm'r*, 220 F.3d 112, 119 (3d Cir. 2000). The ALJ evaluated the Plaintiff's mood disorder under § 12.04 (Affective Disorder) of the Listings, which requires that a claimant meet both the paragraph A criteria (a set of medical findings), and the paragraph B criteria (a set of impairment-related functional limitations). 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. The paragraph B criteria include consideration of activities of daily living, social functioning, concentration, persistence, or pace, and episodes of

---

> … Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

decompensation. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C(1)-(4). Accordingly, Plaintiff's activities of daily living are but one of the elements the ALJ must consider in his evaluation of the paragraph B criteria.

The ALJ concluded that Plaintiff had only mild restrictions in her activities of daily living, noting that in spite of her impairments, Plaintiff watched television, took care of her dogs, prepared meals, completed some household chores, mowed the grass, shopped and was independent in personal care (AR 65). Plaintiff contends that the ALJ "clearly exaggerated" these activities. [ECF No. 9] p. 4. However, Plaintiff reported these same activities on her activity form and also testified to them at the administrative hearing (AR 13-14; 16; 158; 160-161). In sum, we reject the Plaintiff's contention and find no error in this regard.

Nor do we find any error in the ALJ's evaluation of the Plaintiff's daily activities in assessing her credibility in connection with his residual functional capacity ("RFC")[3] determination at step four of the sequential evaluation process. An ALJ must consider subjective complaints by the claimant and evaluate the extent to which those complaints are supported or contradicted by the objective medical evidence and other evidence in the record. 20 C.F.R. §§ 404.1529(a); 416.929(a); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). Once an ALJ concludes that a claimant has a medical condition that could reasonably produce the complained of symptoms, he or she must evaluate the intensity of the symptoms and the extent to which they impair the individual's ability to work. *Hartranft*, 181 F.3d at 362. "This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Id*. In assessing subjective complaints, Social Security Ruling ("*SSR*") 96-7p and the regulations provide that the ALJ should consider the objective medical evidence as well as other factors such as the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any

---

[3] "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3rd Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999); *see also* 20 C.F.R. § 404.1545(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2). In making this determination, the ALJ must consider all the evidence before him. *Burnett*, 220 F.3d at 121.

statements by treating and examining physicians or psychologists, and any other relevant evidence in the case record. 20 C.F.R. §§ 404.1529(c); 416.929(a); *SSR* 96-7p, 1996 WL 374186 at *2.

Here, the ALJ found that the Plaintiff's allegations regarding the intensity and limiting effects of her symptoms were not credible to the extent that they were inconsistent with an ability to perform a reduced range of light work (AR 67). Plaintiff suggests that the ALJ relied on her daily activities as a direct measure of her ability to perform a restricted range of light work. [ECF No. 9] p. 4. However, the ALJ did not find that the Plaintiff's ability to engage in daily activities was dispositive of disability. Rather, in addition to properly considering the Plaintiff's claimed limitations in light of her daily activities, he also considered her treatment history and the opinion evidence as well, and adequately explained how that evidence was inconsistent with her claimed limitations (AR 69-70).

For example, the ALJ considered Plaintiff's allegations of back, hip and shoulder pain, as well as her claim that her pain increased with physical activity (AR 66). He further considered her claimed inability to lift more than a gallon of milk, her discomfort with being around people, her difficulty concentrating, and that her medications cause fatigue (AR 66). He compared these claimed limitations with the Plaintiff's admission that she completed numerous daily activities (AR 66). The ALJ further noted that Plaintiff's daily activities were relatively full and independent, and inconsistent with a disabling level of functioning (AR 69). As the ALJ observed, it would be reasonable to expect the Plaintiff to be "less active if her allegations were true" (AR 69).

The ALJ further found that the Plaintiff's course of medical treatment diminished her credibility with respect to her degree of pain and other subjective complaints, noting that the Plaintiff had refused three different recommended treatments in the past (AR 69). Plaintiff argues that the ALJ's finding in this regard is not supported by substantial evidence because the ALJ failed to note her reasons for refusing treatment. [ECF No. 9] pp. 5-6. Although the ALJ did not specifically recite the Plaintiff's reasons in his decision, he clearly considered them (AR 69). The ALJ acknowledged that while "each of her reasons may have been valid", he

12

reasonably concluding that if her pain was as significant as alleged, she would have been more receptive to treating her pain and overcoming her objections to the offered treatment alternatives (AR 69).[4]

Plaintiff further argues that the ALJ erred in accepting the vocational expert's testimony that she was capable of performing the unskilled, light jobs of a packer, companion, and office helper. [ECF No. 9] p. 9. Plaintiff contends that the ALJ's explanation regarding the discrepancy between the Dictionary of Occupational Titles ("DOT")[5] and the vocational expert's testimony as to whether the identified jobs could be performed with a sit/stand option was inadequate. In relying on vocational expert testimony, the ALJ is required to ask the expert whether any possible conflict exists between his or her testimony and the DOT, and if there is, the ALJ must elicit a reasonable explanation for the apparent conflict. *SSR* 00-04p, 2000 WL 1898704 at *4; *Burns v. Barnhart*, 312 F.3d 113, 126-127 (3d Cir. 2002). The ALJ is further required to explain in his decision how the conflict was resolved. *Id*.

The hearing transcript reflects that the ALJ specifically asked the vocational expert if her testimony with respect to the identified jobs was consistent with their descriptions in the DOT (AR 35). The vocational expert responded that the DOT did not address the sit/stand option, but that based on her experience and vocational knowledge, the identified jobs could be performed with this limitation (AR 35). The ALJ acknowledged the conflict between the DOT and the vocational expert's testimony in his decision, but ultimately relied upon the vocational expert's testimony, since he found her testimony to be "reasonable and supported" based upon her long history of vocational placement (AR 71). The ALJ clearly complied with his obligation under *SSR* 00-04p.

---

[4] Plaintiff faults the ALJ for failing to "mention" in his decision that she needed to move around during the administrative hearing because of her "severe pain." [ECF No. 9] pp. 6-7. It is not clear how this point demonstrates any basis for a finding of reversible error on the part of the ALJ. In any event, the ALJ accommodated the Plaintiff's need to change positions due to her claimed pain by according her a sit/stand option at thirty minute intervals (AR 66).

[5] The DOT is "a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy[.]" *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

Finally, Plaintiff argues that the ALJ should have accepted the vocational expert's testimony that no jobs would be available to Plaintiff if she were off task for 15 to 20 percent of the time (AR 35). [ECF No. 9] p. 7. Testimony of a vocational expert concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the hypothetical question accurately portrays the claimant's individual physical and mental impairments. *Podedworny v. Harris*, 745 F.2d 210, 218 (3rd Cir. 1984). An ALJ is therefore only required to accept such testimony if such limitations are supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987). Here, substantial evidence supports the ALJ's rejection of that claimed limitation. Accordingly, we find no error in this regard.

## V.     CONCLUSION

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONNA M. REDFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-88 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

AND NOW, this 4th day of June, 2012, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [ECF. No. 8] is DENIED, and the Defendant's Motion for Summary Judgment [ECF No. 10] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Donna M. Redfield.

The clerk is directed to mark the case closed.


                                        s/ Sean J. McLaughlin
                                          United States District Judge


cm:    All parties of record